UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHARON MURRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CV-484 PLC |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Sharon Murray seeks review of the decision of Defendant Acting Social Security Commissioner Kilolo Kijakazi denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

**I.      Background and Procedural History**

Plaintiff, who was born in November 1987, filed applications for DIB and SSI in February 2017 alleging that, as of July 2015, she was disabled as a result of lupus, high blood pressure, and asthma. (Tr. 54, 137-42, 145-48) The Social Security Administration (SSA) denied Plaintiff's claims in June 2017, and she filed a timely request for a hearing before an administrative law judge (ALJ). (Tr 66-71, 72-76) The SSA granted Plaintiff's request for review and conducted a hearing in March 2019. (Tr. 26-43)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

In a decision dated March 5, 2019, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 1, 2015, through the date of this decision (20 CFR 404.1520(g))." (Tr. 9-21) Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 131-34, 1-5) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.     Evidence Before the ALJ

Plaintiff testified that she was thirty-two years old and had a twelfth grade education and CNA license. (Tr. 32, 34) Plaintiff lived in an apartment with her husband and three children, ages five, eight, and nine. (Tr. 32-33) Plaintiff worked as a CNA for about four months before she "got sick … on the job." (Tr. 34-35) Plaintiff had also worked as a daycare teacher, but explained:

> I used to have people lift the children for me …. I could only do … sit-down work with the kids, … and the other teacher would take the kids and do the running and stuff. Because if I picked a kid up, my left knee would give out and I would fall to the ground at any given time. Or I was having, I would have fatigue so bad, that sometimes I would pass out [on the job].

(Tr. 35)

Plaintiff testified that her husband cleaned the apartment, grocery shopped, and cooked dinner for the family. (Tr. 36) Plaintiff did not do laundry because "I cannot pick up the baskets and carry the stuff, because my hands shake so bad or sometimes, they swell …. I can't hold things, because they keep falling on the ground." (Id.)

Plaintiff explained that, when she slept less than eight hours at night, "I get so weak to the point where sometimes I can't even stand up. Gets my head spinning or I'm throwing up, and that's, like, a daily thing." (Tr. 37) During the day, Plaintiff slept five to six hours "straight …

2

because I'm in so much pain…. My arms, my legs, my feet and sometimes right here on my neck." (Tr. 38)

Plaintiff took Plaquenil and Cellcept. (Tr. 37-42) Plaintiff explained that her doctors had stopped her prednisone because long-term use "would cause me to have my bone problems … so I probably can't use it until … July of next year." (Tr. 36)

A vocational expert also testified at the hearing. (Tr. 39-) The ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's age, education, and no past relevant work experience who was:

> limited to work at the sedentary exertion level in that they can lift, carry, push or pull ten pounds occasionally, less than ten pounds frequently; sit for six hours in an eight-hour workday; stand or walk for two hours in an eight-hour workday; can frequently reach, handle, finger and feel, but can never climb ropes, ladders or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl; and can have no exposure to unprotected heights or hazardous machinery.

(Tr. 40) The vocational expert testified that such an individual could perform the jobs of addresser, document preparer, and information clerk. (Tr. 40-41) However, when the ALJ added the limitation of occasional handling, fingering, and feeling, the vocational expert stated that the hypothetical individual would not be able to perform any work in the national economy. (Tr. 41-42)

In regard to Plaintiff's medical records, the Court adopts the facts set forth in Plaintiff's statement of uncontroverted facts, as admitted by the Commissioner. [ECF Nos. 22, 29-1] The Court also adopts the facts set forth in the Commissioner's statement of additional material facts because Plaintiff does not dispute them. [ECF No. 29-1]

### III.     Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520(a), 416.920(a). Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. Id. Second, the claimant must establish that she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.152(c), 416.920(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quotation omitted). At step three, the ALJ considers whether the Plaintiff's impairment meets or equals an impairment listed in 20 C.F.R., Subpart P, Appendix 1. Id. at 404.1520(d).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ

4

determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(g), 416.920(g); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's Decision

In her decision, the ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920. (Tr. 12-21) The ALJ determined that Plaintiff: (1) had not engaged in substantial gainful activity since July 1, 2015; and (2) had the severe impairments of systemic lupus erythematosus (SLE), fibromyalgia, and obesity. (Tr. 14) The ALJ also found that Plaintiff had the non-severe impairments of: asthma, hypertension, tremors, seborrheic dermatitis/acne/eczema, cholelithiasis, and anxiety. (Tr. 14-15) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16)

Based on her review of the record, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms," but her

5

"statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 17) Additionally, the ALJ concluded that Plaintiff's "symptoms are well controlled with medication, and return only when she fails to take it."  (Tr. 19)  The ALJ found that Plaintiff had the RFC to perform sedentary work with "no more than frequent reaching, handling, fingering, and feeling; no climbing of ropes, ladders or scaffolds; occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; and no exposure to unprotected heights or hazardous machinery."  (Tr. 16)

Based on the vocational expert's testimony, the ALJ determined that Plaintiff had no past relevant work, but she was able to perform other jobs that existed in significant numbers in the national economy, such as addresser, document preparer, and information clerk. (Tr. 20)  The ALJ therefore concluded that Plaintiff was not disabled.  (Id.)

## V. Discussion

Plaintiff claims that substantial evidence did not support the ALJ's decision.  [ECF No. 21] More specifically, Plaintiff argues the ALJ erred in:  (1) failing to "include a properly supported discussion demonstrating that Plaintiff had the ability to work in an ordinary work setting on a regular and continuing basis, despite her limitations"; and (2) assessing Plaintiff's subjective complaints.  [Id.]  The Commissioner counters that the ALJ properly considered the entire record when determining Plaintiff's RFC and evaluating Plaintiff's subjective complaints.  [ECF No. 29]

### A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Chesser v. Berryhill, 858 F.3d

6

1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).  A court must consider "both evidence that supports and evidence that detracts from the ALJ's decision, [but it] may not reverse the decision merely because there is substantial evidence support[ing] a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determination are supported by good reasons and substantial evidence."  Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]"  Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  RFC

Plaintiff argues that the ALJ erred in formulating her RFC because:  (1) she failed to include a narrative discussion explaining how the medical and non-medical evidence supported each conclusion as required by Social Security Ruling (SSR) 96-8; and (2) evidence in the record did not support the ALJ's conclusion that her medication controlled her symptoms.  Plaintiff also asserts that the ALJ relied too heavily on the June 2017 opinion of a non-examining state agency consultant while failing to consider more recent medical evaluations and evidence that Plaintiff continued experiencing lupus "flares."  In response, the Commissioner contends that the ALJ properly considered the entire record and discussed  relevant factors.

RFC is "the most [a claimant] can do despite [his or her] limitations."  20 C.F.R. §§ 404.1545, 416.945.  It is a function-by-function assessment of an individual's ability to do work-

related activities on a regular and continuing basis.  SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).  The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations."  Kraus v. Saul, 988 F.3d 1019, 1024 (8th Cir. 2021) (alteration in original) (quoting Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015)).

The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7.  "A summary of the medical record does not fulfill the narrative discussion requirement."  Pierce v. Saul, No. 4:19-CV-1886 ACL, 2020 WL 5642311, at *8 (E.D. Mo. Sep. 22, 2020).  The ALJ, however, is not required to make explicit findings for every aspect of the RFC.  Id. (citing Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003)).

A review of Plaintiff's medical records reveals that she presented to emergency rooms seven times in 2015, sixteen times in 2016, and ten times in 2017.  Plaintiff's most frequent complaints included: generalized body pain; joint pain and swelling; abdominal pain, nausea, and vomiting; chest, back, neck, leg, and pelvic pain; rash; headaches and dizziness; numbness and tingling of the hands; and swelling of the hands, arms, and feet.

When Plaintiff established treatment with rheumatologist Dr. Song in January 2017, she reported "pain around elbows, knees, wrists, hands, ankles, with intermittent swelling, and morning stiffness," "papules on the arms, breasts, axilla, abdomen," photosensitivity "with increasing erythema on the skin," "[i]ntermittent pleuritic chest pain," oral ulcers, hair loss, and chronic diarrhea, with "flaring of  these symptoms every 2-3 weeks for the last year."  (Tr. 782)  Dr. Song noted Plaintiff's history of juvenile lupus and observed her "right elbow/arm swelling

8

with severe tenderness, and left posterior knee swelling with tenderness for three weeks." (Tr. 782)  Dr. Song sent Plaintiff to the emergency room, where she explained that "[s]he has not been seen prior to today because she had no insurance." (Tr. 528)  The emergency room doctor ruled out deep vein thrombosis and prescribed a course of prednisone. (Tr.534, 777)

In February 2017, Plaintiff presented to the Medicine Clinic at Barnes Jewish Hospital for follow up treatment for "chronic complaint of diffuse whole body pain and rash." (Tr. 701)  The doctor noted that Plaintiff's CRP was high and ESR and ferritin were slightly elevated, and he prescribed gabapentin. (Tr. 701, 704)

Later that month, Plaintiff returned to Dr. Song's office and reported that the prednisone improved her pain significantly but, after she completed the course, "her pain, fatigue, pleuritic chest pain, rash and oral ulcers recurred." (Tr. 777)  On physical examination, Dr. Song noted Plaintiff's: mild distress; mild swelling in the limbs with significant tenderness diffusely; several round "dark patches with scarring in her arms, abdomen, chest, left axilla, under breasts," erythematous rash on her scalp; and tenderness without swelling in her wrists, MCPs, PIPs, elbows, knees, and ankles. (Tr. 778)  Dr. Song diagnosed Plaintiff with SLE, prescribed hydroxychloroquine (HCQ)  and a course of prednisone, and increased her gabapentin. (Tr. 780)

In April 2017, Plaintiff presented to the emergency room with worsening body pain, joint pain, rash, and swelling to legs, hands, and arms. (Tr. 656)  Plaintiff rated her pain 10/10 and reported fainting "several times" the previous day. (Id.)  After consulting with rheumatology, the emergency room physician prescribed a prednisone taper, hydroxyzine hydrochloride, and diphenhydramine. (Tr. 658)  When Plaintiff saw Dr. Song the next month, she reported that the prednisone helped her pain but she had experienced another lupus flare-up ten days earlier. (Tr. 774)

Plaintiff had a consultative examination with Dr. Montgomery at Medex in May 2017. (Tr. 580) Plaintiff reported generalized body pain, high blood pressure, a tremor in her hands, and weakness. (Tr. 580-81) Dr. Montgomery observed:

> Her main complaints are all of her joints and muscle hurt. She has body pain. At first, she described it in such a way that it is hard for me to believe, but as the interview progressed and the range of motion exercises were done, I believe her and think that the pain was really there and certainly, it was severe.

(Tr. 580) Dr. Montgomery also noted that Plaintiff was "quite anxious" and "in distress doing the range of motion exercises and simply sitting on the table for quite a while." (Tr. 581) On physical examination, Dr. Montgomery observed: tenderness to "several areas of the abdomen, especially the right lower quadrant"; tenderness and pain about the midthoracic back; decreased range of motion of the neck and back; tremors in the hands and arms; slight limp and waddle; inability to walk on toes or heels; ability to do a small, partial squat; "fine dexterous finger control, except they are weak and she has a marked tremor"; "straight leg raising markedly very limited, only about 10 to 15 degrees"; and normal vibratory and pinprick sensation. (Tr. 582) Based on Dr. Montgomery's evaluation, Dr. Cook prepared a "Medical Review Team Determination" for the Missouri Department of Social Services, finding Plaintiff eligible for state disability benefits. (Tr. 590-91)

In June 2017, state agency consultant Dr. McGraw reviewed Plaintiff's medical records and assessed her physical functioning. (Tr. 49-50) Dr. McGraw noted that Plaintiff's symptoms included pain, loss of sensation, and weakness, and found that her impairments "are limiting, but not to the point of precluding all work." (Tr. 49) Dr. McGraw opined that Plaintiff could: occasionally lift/carry ten pounds; frequently lift/carry less than 10 pounds; stand and/or walk about six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. (Tr. 50)

10

Dr. McGraw reviewed Dr. Montgomery's evaluation and found that the "[m]usculoskeletal exams in treating notes do not reflect as severe joint complaints as noted" by Dr. Montgomery.  (Tr. 51)

In September 2017, Plaintiff informed Dr. Song that her pain improved significantly with mycophenolate mofetil (MMF), but she had stopped taking it three weeks earlier due to cost.  (Tr. 771)  Plaintiff's joint pain, myalgia, swelling, and pleurisy had since worsened.  (Id.)  Dr. Song continued Plaintiff's HCQ and MMF and advised Plaintiff to apply for patient assistance.  (Tr. 773)

In early November 2017, Plaintiff presented to her gynecologist with complaints of abnormal uterine bleeding, chronic pelvic pain, worsening headaches, double vision, and constant feelings of cold, weakness, and dizziness.  (Tr. 710-13)  Later that month, Plaintiff sought treatment at the emergency room for nausea, vomiting, diarrhea, and migraines.  (Tr. 650)

In February 2018, Plaintiff presented to the emergency room with complaints of painful joints, pain and swelling of her left arm and shoulder, bilateral leg pain, chest pain, and left-sided bodily numbness. (Tr. 629)  On examination, the doctor noted swelling to Plaintiff's left distal radius, and he prescribed ibuprofen 800 mg and prednisone.  Plaintiff saw Dr. Song the following week and reported that she "has been doing fine but stated that whenever she skipped doses of MMF her pain would get worse," and she had not been taking her MMF and HCQ consistently. (Tr. 768)  The prednisone from the hospital had helped her upper extremity pain and pleuritic chest pain, but she had "residual muscle pain, joint pain with prolonged stiffness, mild swelling in forearms."  (Id.)  Dr. Song continued Plaintiff's MMF and HCQ.  (Tr. 770)

In early May 2018, Dr. Song noted that Plaintiff was taking her MMF and HCQ consistently.  (Tr. 765)  On physical examination, Dr. Song observed that Plaintiff was "in mild distress" and had:  questionable swelling in the forearms with tenderness; several round dark

11

patches with scarring on her arms, torso, left axilla, dorsal hands, and ears; and moderate tenderness in both posterior knees without obvious swelling. (Tr. 766)

Later that month, Plaintiff went to the emergency room for treatment of right jaw pain and swelling, a "pop[ping]" sound when she turned her head to the side, pain with swallowing, gum pain, chills, and right-sided abdominal pain and diarrhea lasting two days. (Tr. 607) Plaintiff had misunderstood Dr. Song's instructions and stopped taking her MMF and HCQ two weeks earlier. The emergency room doctor gave Plaintiff a short course of ketorolac for pain, and she returned to Dr. Song's office the following day. (Tr. 617, 761) Dr. Song examined Plaintiff and noted that she was in mild distress and had tenderness in the right jaw area and right neck, questionable swelling in the forearms with tenderness, several round patches of skin, and moderate tenderness in right posterior knees. (Tr. 761-63)

In August 2018, Plaintiff saw rheumatologist Dr. Lee. (Tr. 786) Dr. Lee noted that Plaintiff had "another [lupus] flare about a month ago," which "went away with some of her leftover prednisone." (Id.) Additionally, Plaintiff "has separate episodes of pain symptoms that she describes as all over body pain as well as joint pain that occur every 1-2 weeks." (Id.) Plaintiff's physical examination was unremarkable. (Tr. 788) Dr. Lee diagnosed Plaintiff with SLE and fibromyalgia, continued her MMF and HCQ, and started nortriptyline.

When Plaintiff followed up with Dr. Lee in October 2018, she informed Dr. Lee that she "feels like the area around her jaw, knees, elbows, upper arms, and around the eye were red and swollen," "knees hurt, but posteriorly"; and "she also has pain all over her body which she thinks is now causing her to be weak."[2] (Tr. 793) Plaintiff also complained of: "pain across the front of

---

[2] Plaintiff had called Dr. Lee's office two weeks before about a rash, shortness of breath, and chest pain, which had since improved. (Tr. 793)

12

her eye"; blurry vision and photosensitivity; peeling on her face, hands, feet, and mouth; ulcers on the roof of her mouth; and "itching especially night and the morning." (Tr. 794) On examination, Dr. Lee noted tenderness on chest and upper arms to palpation, tenderness on palpation of the elbow, tenderness in posterior knees, hyper pigmented lesions on jawline, and assessment of strength in upper extremities limited by pain. (Tr. 796)

The next month, Plaintiff presented to the emergency room for a headache, which she described as "severe" and rated 10/10. (Tr. 1028-29) She also complained of neck pain, sensitivity to light, and visual disturbance. (Id.) The emergency room doctor administered ketorolac and metoclopramide and diagnosed her with acute sinusitis. (Tr. 1035)

The ALJ summarized Plaintiff's medical records and concluded that Plaintiff's "symptoms are well controlled with medication, and return only when she fails to take it." (Tr. 19) The ALJ gave "some weight" to the opinion of non-examining consulting physician Dr. McGraw, who opined that Plaintiff was capable of maintaining full-time employment, and "little weight" to the opinion of Dr. Cook who, based on Dr. Montgomery's physical examination, found that Plaintiff was disabled for purposes of Missouri's disability benefits program. The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with certain postural and environmental limitations and "no more than frequent reaching, handling, fingering, and feeling."[3]  Under the

---

[3] According to SSR 85-15,

> [r]eaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do…."Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion.

13

regulations, sedentary work "involves lifting 10 pounds occasionally and less than 10 pounds frequently, sitting for 6 hours, and standing and walking for 2 hours." Wilbers v. Kijakazi, No. 4:20-CV-735 SNLJ, 2021 WL 4399483, at *5 (E.D. Mo. Sep. 27, 2021) (citing 20 C.F.R. § 404.1567(a); Social Security Ruling 96-9p).

Plaintiff correctly notes that, in making the RFC determination, the ALJ failed to support her findings with specific medical evidence. See, e.g., Pierce, 2020 WL 5642311, at *8–9; Smith v. Berryhill, No. 4:17-CV-2398 RLW, 2018 WL 4600649, at *6–7 (E.D. Mo. Sep. 25, 2018). The ALJ did not explain, and it is not apparent to the Court, how either the medical findings or nonmedical evidence in the record demonstrate Plaintiff's ability to perform the functions required for sedentary work. More specifically, the ALJ failed to identify any evidence in the record supporting her findings that Plaintiff was capable of (1) frequent reaching, handling, fingering, and feeling and (2) sitting for a total of six hours in an eight-hour workday.

In regard to Plaintiff's upper extremities, Plaintiff's treating physicians regularly noted Plaintiff's generalized body pain and pain, swelling, and tenderness of the hands and arms. Dr. Montgomery, the only consulting physician to perform a physical examination, credited Plaintiff's severe body pain and noted that she had tremors in the hands and arms, and "[f]ine dexterous finger control, except they are weak and she has a marked tremor."[4]

Nevertheless, without citing supporting medical evidence, the ALJ found that Plaintiff was capable of frequent reaching, handling, fingering, and feeling. The Dictionary of Occupational

---

SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). "As a general rule, limitations of fine manual dexterity have greater adjudicative significance--in terms of relative numbers of jobs in which the function is required--as the person's exertional RFC decreases." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). "Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work." Id.

[4] The ALJ did not discuss Dr. Montgomery's evaluation in her decision.

14

Titles defines "frequently" as "activity or condition [that] exists from 1/3 to 2/3 of the time," and "occasionally" as "activity or condition [that] exists up to 1/3 of the time." Owens v. Colvin, 727 F.3d 850, 851-52 (8th Cir. 2013). Significantly, the vocational expert in this case testified that if a hypothetical individual with Plaintiff's age, education, and no past relevant work experience was limited to work at the sedentary level with occasional handling, finger, and feeling, she would not be able to perform any work in the national economy. Given that the ALJ's decision as to non-disability turned on Plaintiff's use of her arms and hands, the ALJ erred in failing to support this aspect of the RFC with medical evidence.

The ALJ's determination that Plaintiff had the RFC to perform sedentary work also assumed that Plaintiff was able to sit for a total of six hours in an eight-hour workday. However, Plaintiff's medical records are replete with complaints of pain and tenderness in her back and neck and generalized body pain and weakness. The only evidence from an examining physician relating to Plaintiff's ability to sit was Dr. Montgomery's comment that "simply sitting on the [examination] table for quite a while" caused Plaintiff pain. After reviewing the record as a whole, the Court does not find any medical evidence that supports the ALJ's finding that Plaintiff could sit for a total of six hours or frequently reach, handle, finger, and feel. See, e.g., Wilbers, 2021 WL 4399483, at *5; Priddy v. Saul, No. 4:19-CV-945 RLW, 2020 WL 7024237, at *7–8 (E.D. Mo. Nov. 30, 2020).

Nor did the non-medical evidence, such as Plaintiff's activities of daily living and self-reported limitations, support the ALJ's RFC determination. Plaintiff testified that she slept five to six hours per day while her children were at school and she was unable to clean, cook, or do laundry. Similarly, she stated in her function report that, when her "body is in pain," she could

not dress, bathe, or use the toilet without assistance, and the pain sometimes caused her to vomit and/or "pass out." (Tr. 217-18)

The Court recognizes that the ALJ's failures to include a narrative discussion of Plaintiff's RFC, standing alone, does not necessarily require remand. The Eighth Circuit has consistently held that "an arguable deficiency in opinion-writing technique does not require [a court] to set aside an administrative finding when that deficiency had no bearing on the outcome." Noerper v. Saul, 964 F.3d 738, 746 (8th Cir. 2020) (quoting Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)). However, remand is warranted "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." Scott v. Astrue, 529 F.3d 818, 822 (8th Cir. 2088).

In this case, the Court finds other legal errors, such as the mischaracterization of evidence from the record and improper assessment of Plaintiff's subjective complaints, require reversal. For example, the ALJ's finding that Plaintiff's symptoms were well controlled with medication was central to her decision. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (quoting Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)).

The ALJ correctly observed that Plaintiff's symptoms worsened significantly when she failed to take her MMF and HCQ as prescribed. However, the medical records do not support the ALJ's finding that Plaintiff's symptoms returned only when she failed to take her medications. To the contrary, the records reflect that Plaintiff experienced symptoms and flares even when she consistently took her medications. For example, in August and October 2018, Plaintiff was taking MMF and HCQ as directed but continued to experience episodes of joint pain and all-over-body pain every one to two weeks.

16

Furthermore, to the extent the ALJ's finding relied on the efficacy of prednisone in treating Plaintiff's lupus flares, the ALJ overlooked Plaintiff's testimony that her doctors stopped prescribing it due to the risks of long-term use. At the December 2018 hearing, Plaintiff explained that she could not resume prednisone for another seven months. In short, Plaintiff's medical records do not support the ALJ's conclusion that her symptoms were well controlled and only returned when she failed to take her medications.

Plaintiff also challenges the ALJ's assessment of her subjective complaints. When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing her reasons for discrediting the testimony. Renstrom, 680 F.3d at 1066. In this case, the credibility analysis was particularly central to the ALJ's RFC determination because Plaintiff's primary complaints were body, muscle, and joint pain. The ALJ cursorily discredited Plaintiff's subjective complaints, stating that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 17) However, the decision did not provide any reasons or evidence supporting her assessment of Plaintiff's subjective complaints.

The Commissioner argues that the ALJ properly considered the entire record, including the opinion of non-examining state agency consultant, Dr. McGraw, which supported the RFC determination. However, "[t]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003).

17

Dr. McGraw reviewed Plaintiff's medical records in June 2017 and found that Plaintiff's impairments were limiting "but not to the point of precluding all work." Dr. McGraw opined that Plaintiff could frequently lift/carry less than ten pounds, stand and/or walk for a total of six hours in an eight-hour workday, and sit for a total of eight hours in an eight-hour workday.[5] The ALJ credited Dr. McGraw's opinion because he had "specialized Social Security disability program knowledge and experience serving as an independent, objective, neutral and impartial medical expert evaluating Social Security disability opinions" and his "opinions are broadly consistent with supported by the relevant medical evidence of record[.]" (Tr. 19)

The ALJ's decision provides no support for her conclusion that Dr. McGraw's opinions were consistent with the medical evidence of record. Contrary to the ALJ's conclusory finding, the medical records upon which Dr. McGraw purportedly based his opinion reflected significant physical impairments and contained no evidence that Plaintiff could frequently lift/carry less than ten pounds, stand and/or walk for a total of six hours in an eight-hour workday, and sit for a total of eight hours in an eight-hour workday. In fact, Dr. McGraw noted that the record contained "no medical opinion from any medical source." (Tr. 49) Furthermore, Dr. McGraw based his opinion on the records of Plaintiff's treatment through May 2017, and the ALJ did not issue her decision until March 2019. Dr. McGraw's opinion does not constitute substantial evidence to support the ALJ's finding that Plaintiff was not disabled.

---

[5] Dr. McGraw's finding that Plaintiff was capable of sitting and/or standing for a total of six hours in an eight-hour workday placed Plaintiff at the level of light work. The regulations define "light work" as work that "requires a good deal of walking or standing, or ... involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). To be capable of performing light work, a claimant must be able to stand or walk for six hours of an eight-hour workday. Combs v. Berryhill, 878 F.3d 642, 645 n. 5 (8th Cir. 2017) (citing Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995)).

**VI.     Conclusion**

For the reasons set forth above, the Court finds that the ALJ's RFC determination was not based upon substantial evidence in the record as a whole.  Because the RFC determination is not supported by substantial evidence, the Court reverses and remands the case to the ALJ for further review.  On remand, the ALJ shall support the RFC determination with medical evidence that addresses Plaintiff's ability to function in the workplace, properly evaluate Plaintiff's subjective allegations and consider the opinion evidence, and formulate an RFC based on the record as a whole.  To the extent the record is insufficient, the ALJ should re-contact the examining physicians or order further consultative examinations that specifically address Plaintiff's functional abilities.

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

An order of remand shall accompany this memorandum and order.

                                                                            _____
                                                                            PATRICIA L. COHEN
                                                                            UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of February, 2022